82 F.3d 435
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PHILLIPS PETROLEUM COMPANY, Plaintiff-Appellant,
v.
REXENE CORPORATION, Defendant-Appellee.
 No. 95-1451.
 United States Court of Appeals, Federal Circuit.
 March 27, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
May 20, 1996.
 
 Before RICH, MAYER, and LOURIE, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Phillips Petroleum Company appeals from a judgment of the United States District Court for the District of Delaware holding that Rexene Corporation was not liable for patent infringement because it was a licensee under an agreement that Phillips had not properly terminated. Phillips Petroleum Co. v. Rexene Corp., No. 90-208-LON (D.Del. June 12, 1995). Because the court erred in determining that Phillips had not properly terminated its agreement with Rexene, we reverse and remand.
 
 DISCUSSION
 
 2
 In 1983, Rexene obtained a license from Phillips to produce crystalline polypropylene under Phillips' U.S. Patent 4,376,851. The license required Rexene to make quarterly royalty payments to Phillips and provide quarterly reports on its polypropylene production. The license further included a termination provision, Article 10.2, which stated that Phillips could terminate the license agreement if Rexene either failed to pay royalties or failed to make the required reports within 45 days after the close of a calendar quarter. In particular, Article 10.2 provided:
 
 
 3
 In the event of the default or failure by [Rexene] to make payment herein provided when due or to comply with any of the terms, covenants or provisions of this Agreement, [Rexene] shall have sixty (60) days after the giving of written notice by PHILLIPS of such default within which to correct such default. If such default is not corrected within the said sixty (60) day period, PHILLIPS shall have the right, at its option, to cancel and terminate this entire Agreement. [Emphasis added].
 
 
 4
 In November 1989, Phillips determined that Rexene had failed to make royalty payments or to tender production reports for the second and third quarters of 1989. Phillips sent two notices to Rexene's corporate headquarters in which it notified Rexene that it had not received the royalty payments or production reports. These notices were form letters that Phillips used for a variety of purposes. In response, Rexene paid the royalties in December 1989; however, it failed to submit the production reports. By February 1990, Rexene had again missed the deadline for submission of royalty payments and production reports for the fourth quarter of 1989. On February 15, 1990, Phillips sent Rexene another form notice, which stated:
 
 
 5
 According to our records, the following has occurred under the subject licensing agreement, as noted below:
 
 
 6
 ....
 
 
 7
 1. No payment received for 4th quarter 1989.
 
 
 8
 2. No royalty report received for 2nd through fourth quarters 1989.
 
 
 9
 ....
 
 
 10
 Additional Comments: Please note we have received payment for the 2nd and 3rd quarters of 1989 but not the royalty reports.
 
 
 11
 The letter did not specifically state that Rexene was in "default" of the agreement. Nor did it specifically refer to Article 10.2 of the license agreement or the 60-day period to cure such default.
 
 
 12
 Rexene did not cure its default within the 60-day cure period provided in the agreement. Thereafter, Phillips sent Rexene a letter terminating the license and sued for patent infringement. After a five-day bench trial, the district court concluded that, under New York law,* Phillips was not required to provide a heightened form of notice, analogous to that required in landlord-tenant contracts, before terminating the agreement for default. However, the court also concluded that Article 10.2 of the agreement was ambiguous as to the type of notice required to initiate the 60-day cure period. Relying on the parties' prior course of conduct, the court interpreted Article 10.2 to require heightened notice. In particular, the court determined that, before terminating the contract for default, Phillips was required to provide Rexene with written notice of its default and either explicitly refer to Article 10.2 or sufficiently summarize its terms. Based on this interpretation, the court found that Phillips had not provided the requisite notice of default and therefore the agreement remained in effect. Thus, it held that Rexene did not infringe the '851 patent. Phillips appeals.
 
 
 13
 Interpretation of a license agreement is a question of law, governed by state contract law. Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 931, 30 USPQ2d 1070, 1072 (Fed.Cir.1994). Here, the parties agree that New York law controls. We review de novo the court's interpretation of the agreement. Intel Corp. v. ULSI Sys. Technology, Inc., 995 F.2d 1566, 1569, 27 USPQ2d 1136, 1138 (Fed.Cir.1993), cert. denied, 114 S.Ct. 923 (1994); W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443 (1990).
 
 
 14
 On appeal, Phillips argues that the language of the agreement is clear and unambiguous. Phillips asserts that Article 10.2 required them to do only one thing in the event of a default by Rexene--provide "written notice ... of such default." Based on this unambiguous language, Phillips argues that the district court erred when it looked to the parties' prior course of conduct to interpret the agreement to require heightened notice.
 
 
 15
 We agree. The language of the agreement is clear on its face and the district court erred when it relied on extrinsic evidence to alter the agreement's unambiguous language. W.W.W. Associates, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443 (stating that extrinsic evidence, such as prior course of conduct, "is generally inadmissible to add to or vary the writing"). According to the unambiguous language of the agreement, Phillips was only required to provide notice of the defaults, defaults being acts Rexene failed to perform under the agreement. The agreement did not require Phillips to refer to or summarize Article 10.2 of the agreement in its notice. Nor did it even require that Phillips use the word "default" in its notice. We must enforce the unambiguous language of the agreement as written. See id. ("[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.").
 
 
 16
 Here, despite its erroneous interpretation of the agreement's notice requirement, the district court found that "the February 15 letter was certainly adequate to provide actual notice of the defaults." There is no error in this finding. Thus, under the proper interpretation of the agreement, Phillips provided adequate notice of default under Article 10.2 of the license agreement.
 
 
 17
 Rexene raises two alternative grounds for affirmance of the district court's holding. First, Rexene argues that the court erred in holding that New York law does not require a heightened notice of default under these circumstances. Second, Rexene argues that Phillips should be judicially estopped from arguing that the license agreement was unambiguous.
 
 
 18
 As to any heightened notice requirement under New York law, we agree with the trial court that prior federal court decisions present two irreconcilable views of the issue. On the one hand, the Second Circuit in Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228 (2d Cir.1991), indicated that, between commercial parties having a commercial distributorship contract, a notice of default is adequate if it conveys the facts giving rise to the default. On the other hand, two district court decisions, NL Industries, Inc. v. PaineWebber Inc., 720 F.Supp. 293 (S.D.N.Y.1989) and PacifiCorp Capital, Inc. v. Tano, Inc., 877 F.Supp. 180 (S.D.N.Y.1995), required that a notice of default in commercial contexts either refer to the specific default provision or summarize its terms. Although the issue remains open for the New York Court of Appeals to decide, we agree with the district court that the Second Circuit's decision in Carvel represents the better view, the one likely to be followed by the New York courts. Judicially-created protections such as heightened notice requirements may be necessary in situations involving agreements between parties of unequal bargaining power, e.g., residential landlords and tenants. However, as the district court stated, "[l]arge commercial entities such as Phillips and Rexene are well able to provide for as much or as little in the way of notice as they want." Additional judicially-created notice of default requirements are unnecessary in transactions involving large commercial entities. Thus, the unambiguous language of the license agreement must be enforced according to its terms. See W.W.W. Associates, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443.
 
 
 19
 Rexene's position is certainly understandable when it argues that Phillips' letter did not look like a formal notice of default of the kind that it had been threatened with in the past. Phillips' communications were as inconsistent as was Rexene's satisfaction of its obligations under the agreement. However, the February 15th letter clearly met Phillips' obligations under the agreement; more was not required under New York law.
 
 
 20
 Moreover, we do not agree with Rexene that the doctrine of judicial estoppel precludes Phillips from asserting that Article 10.2 of the agreement is unambiguous. Before the court's denial of Rexene's summary judgment motion, Phillips on several occasions asserted that prior dealings between the parties raised material issues of fact about how the parties interpreted the February 15, 1990 letter. However, Phillips never asserted that the language in Article 10.2 was ambiguous. Nor did it assert that the parties' prior course of dealing raised material issues of fact as to the meaning of the agreement. In fact, Phillips has consistently maintained throughout the district court proceedings and before this court that the language is unambiguous and must be enforced as written. Thus, the doctrine of judicial estoppel does not apply.
 
 
 21
 We therefore reverse the district court's judgment based on its holding that Phillips failed to provide adequate notice prior to terminating its license agreement with Rexene. We remand for further proceedings consistent with our decision.
 
 
 
 *
 The contract provided that the agreement "shall be construed according to the laws of the State of New York." [A2857]